IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No. 5:21-cr-23 |
| ) | |
| RICHARD E. MOORE ) | |

**UNITED STATES' RESPONSE TO**
**DEFENDANT'S MOTION FOR REVIEW OF DETENTION ORDER**

Moore appears to be delaying the revocation proceedings in an attempt to create an excuse for postponing trial. But four months ago, when the Court concluded that the defendant's "extensive and repeated delays" in obtaining counsel were a voluntary and intentional relinquishment of the right to counsel, it warned him that trial will begin on December 2, 2024; he should be ready to represent himself then; and if he obtains counsel before trial, as he now has, that attorney should be prepared to go forward on that date. *Moore* Dkt. No. 91 at p.3. The Court even appointed advisory counsel to help the defendant prepare for trial while incarcerated. *Id.* at 5 ("Moore is currently serving a nine-month state sentence and may encounter additional difficulties in proceeding pro se because of his incarceration.").

The magistrate judge correctly found that the defendant is unlikely to abide by the most fundamental condition of release: Do not commit crimes. And the fact that the defendant will now be in detention for the final two months before trial, just as he has been for most of the year, is not such a departure from the status quo as to raise due process concerns or justify postponing trial.

I. **The defendant says he wants to be released before trial, but his actions have delayed the revocation proceedings by more than three weeks.**

The defendant says he wants his freedom, and law favors prompt resolution of the request. *See, e.g., United States v. Boone*, No. 7:21-CR-00022 (W.D. Va.) (Dillon, J.) (PACER shows time

from arrest in July 2021, to revocation and detention, to order upholding detention was nine days); 18 U.S.C. § 3145(b) (motion for review of detention order "shall be determined promptly"). The defendant's actions, however, have worked against his stated interests and delayed the revocation proceedings by *more than three weeks*.

In *Boone*, the bond revocation hearing was set for and held the day after the defendant's arrest. *Boone* Dkt. Nos. 30-34. Here, the revocation hearing was set for the same day the defendant was arrested, but the defendant said he was in the process of hiring counsel, so the hearing was continued until the next day. *Moore* Dkt. Nos. 102-103. Less than half an hour before that hearing, new counsel for the defendant filed a notice of appearance, but he did not show up in court, and the hearing was postponed again. Ex. A ; *Moore* Dkt. No. 105. That was a Friday.

The following Monday, the court offered and the parties agreed to reset the bond revocation hearing for Wednesday of that week. On Tuesday, defense counsel said he had overlooked a scheduling conflict that would prevent him from attending Wednesday. He then said he would be available for a hearing that Friday or the following Monday. Because the following Monday was a federal holiday and the court would be closed, the court accepted defense counsel's offer for that Friday. He responded by saying he could appear only by Zoom. Ex. B.

The court set the hearing for the Tuesday after the Monday holiday, informed defense counsel he would need to appear in person, and the hearing was held. Ex. C. Because of the defendant's delay, *12 days* had passed since he was arrested. *Moore* Dkt. Nos. 102-117.

At the bond revocation hearing, the defendant argued that "if he stays in jail, [he will] have to ask for a continuance [of trial]." *Moore* Dkt. No. 131-1 at 17:17-21. But he did not move quickly for review of the detention order, as one would expect of a defendant who wants to be out on bond preparing for trial. To the contrary, the defendant took *another 11 days* to file his motion. *Moore*

2

Dkt. Nos. 114-131. The defendant in *Boone*, by comparison, moved for review the day after she was remanded to custody and before the court had even issued a written order. *Boone* Dkt. Nos. 32-37.

Having delayed the revocation proceedings in this way by *more than three weeks*, the defendant audaciously argues that pretrial detention "would almost certainly lead to continuances and delays, as defense counsel would be *forced* to review extensive discovery with a detained client under sixty days." *Moore* Dkt. No. 131-2 at p.10 (emphasis added). But no one forced defense counsel to take this engagement. He knew trial was in two months. He knew the Court had warned that any new attorney would need to be prepared to go to trial on December 2, 2024. He knew the defendant had been incarcerated for months. He knew how much or how little the defendant had prepared for trial with his previous attorneys, with the advisory counsel the Court appointed to him, and on his own.[1] He knew the defendant had just been arrested upon being released from state custody for violating the conditions of his federal pretrial release, as set forth in the second superseding indictment. He knew the first order of business was a bond revocation hearing. He knew there was an appreciable risk the defendant would be detained pretrial and defense counsel would need to prepare for trial under those circumstances. He knew that once he made an appearance, it would be difficult to withdraw.

In short, defense counsel knew what he would be getting into *before* he chose to get into it. And the defendant – who told Judge Hoppe he *wants* to go to trial on December 2 – has known since June, when the Court warned him that he and any new counsel should be ready to go to trial on December 2, that the chances of delaying trial by hiring new counsel were negligible.

---

[1] The defendant declined to receive discovery while incarcerated, relying instead on his advisory counsel, who did receive it. Ex. D; *Moore* Dkt. No. 131-1 at 20:17-22:4.

3

**II.     The defendant should be detained because there is probable cause to believe he repeatedly committed, while on release, the same federal tax crime for which he was first indicted and because he is unlikely to abide by the prohibition against violating the law if released.**

Subsection (b) of 18 U.S.C. § 3148 prescribes a two-step inquiry that hinges on one conjunction and two disjunctives. Specifically, the statute provides that an order of revocation and detention "shall" be entered if a judicial officer:

(1) finds that there is--

(A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; **or**

(B) clear and convincing evidence that the person has violated any other condition of release; **and**

(2) finds that--

(A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; **or**

(B) the person is unlikely to abide by any condition or combination of conditions of release.

§ 3148(b)(1) and (2); *United States v. Perry*, 20 F. App'x 97, 106 n.8 (4th Cir. 2001); *United States v. Boone*, No. 7:21-CR-00022, 2021 WL 3234618, *2 (W.D. Va. July 29, 2021).

The first question is whether there is probable cause to believe that the person has committed a Federal, State, or local crime while on release **or** clear and convincing evidence that the person has violated any other condition of release. § 3148(b)(1)(A) and (B). If the judicial officer finds either or both, the inquiry proceeds to the second step. If neither is found, the inquiry ends, and the defendant remains free from detention, under the same conditions of release.

The second question is whether there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community **or** the person is unlikely to abide by any condition or combination of conditions of release. § 3148(b)(2)(A) and (B). If the judicial officer finds either or both, the inquiry ends in an order of revocation and detention, and also potentially in prosecution for contempt of court. If neither is found, the inquiry ends in the defendant's continued release, with or without modification of the conditions of release.

> **A. The magistrate judge found that there is probable cause to believe the defendant committed a Federal, State, or local crime while on release and that the defendant is unlikely to abide by any condition or combination of conditions of release.**

In this case, the magistrate judge found there is probable cause to believe that the defendant has committed a Federal, State, or local crime while on release, in satisfaction of § 3148(b)(1)(A). *Moore* Dkt. No. 131-1 at 3:13-18 ("I do find that based on the information in the petition and the filing of the second superseding indictment that there is probable cause showing that Mr. Moore has violated federal law while on release; and violated the corresponding condition that he must not violate any federal, state, or local law while on release."); *Moore* Dkt. No. 118 at p.1 ("Based on the information in the Petition and taking notice of the charges in the Second Superseding Indictment, the Court finds probable cause that the Defendant violated the condition of pretrial release by violating a federal law while on release."). Consequently, the inquiry proceeded to the second step.

The magistrate judge also found that the defendant is unlikely to abide by any condition or combination of conditions of release, in satisfaction of § 3148(b)(2)(B):

```
 3            So while I could again impose a condition that
 4   Mr. Moore not commit any offenses or not exercise ownership or
 5   control over a business or be involved in the finances of those
 6   businesses or involved in the finances or tax administration
 7   for Nexus, considering the information in front of me, I just
 8   can't find that he's likely to abide by those conditions.  And
 9   that's the thing that convinces me that I can't release
10   Mr. Moore on conditions because it's such a basic and
11   fundamental condition that you not commit offenses while on
12   release, and that he not commit certainly the same offense that
13   he's charged with.  And there is evidence before the Court that
14   he did just that.
```

*Moore* Dkt. No. 131-1 at 26:3-14; *Moore* Dkt. No. 118 at p.2 ("Based on the evidence in the Petition and the arguments and proffers of counsel at the detention hearing, the Court finds that it is unlikely the Defendant will abide by any condition or combination of conditions of release.").

Accordingly, the magistrate judge revoked the defendant's release and ordered him detained. *Moore* Dkt. No. 131-1 at 26:15-17 ("So for those reasons, I am going to enter a detention order, and I will find as a basis that Mr. Moore is just not likely to abide by the conditions of release."); *Moore* Dkt. No. 118 at p.3 ("Accordingly, the Court finds that Defendant is unlikely to abide any condition or combination of conditions, in particular that he will not violate any federal, state, or local law, while on release. It is therefore ORDERED that the Defendant's pretrial release is hereby revoked, and he shall be detained pending further proceedings in this case.").

The Court reviews the matter *de novo* and must independently determine whether detention is warranted. *Boone*, 2021 WL 3234618 at *2. But both the probable-cause finding and the unlikely-to-abide finding were correct, as will be explained in the remainder of this response.

**B. There is probable cause to believe that the defendant, while on release, repeatedly committed the same federal tax crime for which he was first indicted.**

Last month, the grand jury returned a second superseding indictment in this case, charging the defendant with six more crimes. *Moore* Dkt. No. 97 at p. 5 (Counts 13-18). Those six new counts were for violation of the same federal law as the first ten counts: failure to account for and pay over trust fund taxes in violation of 26 U.S.C. § 7202. *Id.* at pp. 3, 5. All of those new counts were for periods of time *after* the defendant's December 2021 indictment. *Id.* at p. 5.

| Count | Calendar Quarter Ending | Due Date of Form 941 |
|---|---|---|
| 13 | December 31, 2022 | January 31, 2023 |
| 14 | March 31, 2023 | April 30, 2023 |
| 15 | June 30, 2023 | July 31, 2023 |
| 16 | September 30, 2023 | October 31, 2023 |
| 17 | December 31, 2023 | January 31, 2024 |
| 18 | March 31, 2024 | April 30, 2024 |

Because the grand jury found there was probable cause that the defendant repeatedly violated federal law after he was indicted, and because the defendant was on release at the time, there is probable cause to believe the defendant committed a federal crime while on release, in satisfaction of 18 U.S.C. § 3148(b)(1)(A). *See United States v. Manafort*, 897 F.3d 340, 344 (D.C. Cir. 2018) (grand jury indictment conclusive as to probable cause). At the revocation hearing, the defendant conceded the point. *Moore* Dkt. No. 131-1 at 2:17-3:9 ("[W]e understand the law very well in this situation … that the probable cause comes with the indictment. … We believe the indictment establishes that."); *id.* at 23:10-12 ("I'm not going to argue as to probable cause because I can't because they got it. They got the indictment.").

**C. If released, the defendant is unlikely to abide by the foundational directive not to violate the law.**

On December 16, 2021, the Court imposed several conditions of release. *Moore* Dkt. No. 12. The first condition was that the defendant must not violate federal, state, or local law:

7

> (1) The defendant must not violate federal, state, or local law while on release.

*Id.* at p.1. This has been called "the most fundamental condition of release under the Bail Reform Act." *Manafort*, 897 F.3d at 345. The Court warned the defendant that if he violated *any* condition of release, he could be arrested and detained.

> Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in

*Moore* Dkt. No. 12 at p.4. The Court also warned the defendant that if he violated *this* particular condition of release, he could be sentenced to an additional 10 years' imprisonment.

> While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) any other sentence you receive.

*Id.*; 18 U.S.C. § 3147.

The defendant acknowledged he was aware of the conditions of release. He promised to obey all of them. And he said he knew what the consequences would be if he did not.

**Acknowledgment of the Defendant**

> I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____ Deputy Clerk

_____ Defendant's Signature

Harrisonburg, VA
City and State

*Id.* Because of that promise, the Court released him.

**Directions to the United States Marshal**

( ☑ ) The defendant is ORDERED released after processing.
( ☐ ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: 12/16/2021

_____ Judicial Officer's Signature

Hon. Joel C. Hoppe, U.S. Magistrate Judge
Printed name and title

*Id.*

8

But less than a year after he was indicted and released, as alleged in the second superseding indictment, the defendant broke his promise, committed the same federal tax crime he had been indicted for violating ten times before, and continued to commit that crime quarter after quarter after quarter – six times total, until he was imprisoned by the Commonwealth on unrelated charges. *Moore* Dkt. No. 97, pp. 3, 5 (Counts 13-18).

The most recent research found by counsel for the government suggests that this degree of contempt for the power of the Court is rare. Only 6.4% of federal defendants are arrested for committing a crime on pretrial release:

**Percent of released federal defendants with pretrial violations, by violation type**

| Violation types | Percent of released defendants with pretrial violations |
|---|---|
| Any adverse events | 13.8% |
| Pretrial revocation | 8.1 |
| New arrest or FTA | 7.8 |
| Arrests any offense | 6.4 |
| Arrests violent offenses | 1.0 |
| Failure to appear | 1.7 |
| Number of defendants | 85,369 |

Thomas H. Cohen, Christopher T. Lowenkamp & William E. Hicks, *Revalidating the Federal Pretrial Risk Assessment Instrument (PTRA): A Research Summary*, 82 Fed. Prob. J. 23, 26 (Sept. 2018). This means that the vast majority of federal defendants on pretrial release – about 93% – do not reoffend (or do not get caught reoffending, as the defendant did). It also suggests that the odds of the defendant reoffending were about one out of 15, and he chose to be the exception to the rule. Not once, but every quarter, six quarters in a row, for a year and a half.

Against this backdrop, the only question is whether the defendant still has motive, means, and opportunity to violate the federal tax laws. We know he still has motive because his failure to

pay over to the IRS the trust fund taxes Nexus withheld from its employees' paychecks gave him more than $1.8 million to play with, and the lure of easy money like that does not disappear overnight. *Moore* Dkt. No. 97 at ¶¶ 8-9. We also know he still has means because all it takes to commit a violation of § 7202 is access to a bank account in which trust fund taxes are held, and a willingness not to turn those trust fund taxes over to the IRS when they should be turned over. The defendant's offer to wear an ankle monitor, therefore, was an empty gesture. *See Moore* Dkt. Nos. 131-2 at p.9 and 131-1 at 7:5-8.

Perhaps for these reasons, the defendant argued to the magistrate judge that the defendant has "*zero* opportunity" to commit the same offense or any related offense because "Nexus no longer exists in any functional capacity, and has no employees." *Moore* Dkt. No. 131-2 at p.4 (emphasis added). But that argument was built on a material omission, as the government informed the court during the revocation hearing, because the defendant has at least two other businesses, Entlest Brands and Gamer Oasis. *Moore* Dkt. No. 131-1 at 7:12-19. When the court asked the defendant whether this was true, he conceded it was. *Id.* at 13:17-14:2. Indeed, later in the hearing counsel for the defendant admitted that "Richard has been the owner of those two businesses, Honorable Judge Hoppe, *for years*." Dkt. No. 131-1 at 22:20-22 (emphasis added). Consequently, the defendant has not only motive and means but opportunity too.

The defendant argues, as he did at the revocation hearing after his interest in Entlest Brands and Gamer Oasis came to light, that the government has not shown that he:

1) "has ever had a tax fraud issue allegation regarding those two businesses";

2) "in 45 days before his trial, is going to go out and report – wrongfully report taxes associated with those two businesses";

3) "45 days from the trial you think –with an affidavit and a change of ownership he's going to go and sneak behind the Court's back and file false taxes for those two businesses";

4) "in less than 45 days before trial, when taxes aren't even due, [he] is likely to file a tax report (false or otherwise) for his two businesses"; and

5) "even submitted a false tax return for either of the businesses he owned outright."

Dkt. No. 131 at pp.5-6.

The defendant is right that the government has not shown these things, but so what? They are red herrings. The question is whether the defendant has an opportunity to violate § 7202 by failing to pay over trust fund taxes withheld from employee paychecks. *See* Dkt. No. 131-1 at 7:24-8:2 ("The way that this crime works is you withhold money from an employee's paycheck and then you don't pay it over. It's really easy to commit."). By his own admission, the defendant has interests in two businesses, Entlest Brands and Gamer Oasis. And the government's investigation shows that he has employees and access to both companies' bank accounts. That's opportunity.

Whether the defendant "ever had a tax fraud issue allegation" or "even submitted a false tax return" for those two businesses, as argued in his first and fifth points above, is irrelevant to the question of whether those companies give him an opportunity to pocket trust fund taxes, which they do.

Likewise, whether or not he is going to file a tax return before trial for those two companies' trust fund taxes, as argued in the defendant's second, third, and fourth points above, is irrelevant to whether the companies represent an opportunity for him to take trust fund taxes for himself. Dkt. No. 131-1 at 20:12-16. These three points are also irrelevant because they suggest the government must show that the defendant is going to commit a crime. But we're not soothsayers, and that's not the standard. All the government needs to show is that the defendant is unlikely to abide by the chief directive not to violate the law, which it has done.[2]

---

[2] The defendant's third point hints at an offer he made at the revocation hearing to "legally cede ownership and control" of Entlest Brands and Gamer Oasis. Dkt. No. 131-1 at 18:10-11. It is not clear whether the defendant is making that

In sum, given the history here, and because the defendant continues to have motive, means, and opportunity to violate § 7202 every time he pays an employee and withholds taxes from their paychecks, the defendant is unlikely to abide by any condition or combination of conditions of release, in satisfaction of § 3148(b)(2)(B).

### D. The statute does not require analysis under the flight-and-danger clause.

The defendant cries foul because the magistrate judge and the government did not engage in analysis under the flight-and-danger provision of § 3148(b)(2)(A). Dkt. No. 131 at p.2 ("The honorable magistrate refused to abide by the law."). Conspicuously absent from both of the defendant's briefs and his argument at the revocation hearing, however, was any attempt to explain what function the following circled "or" serves in the statute, if not to make the unlikely-to-abide provision an alternative to the flight-and-danger provision, and vice versa:

> (2) finds that--
>
> (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or
>
> (B) the person is unlikely to abide by any condition or combination of conditions of release.

§ 3148(b)(2)(A) and (B). Also notably absent was any effort to address the government's argument in paragraph 11 of its memo in support of revocation, which the government also mentioned during the revocation hearing and reproduces here for the convenience of the Court:

> 11. Last, no finding that the defendant is a flight risk or danger to the community is necessary. *Manafort*, 897 F.3d at 345 ("Either finding [of flight risk and danger under § 3148(b)(2)(A) or

---

offer to this Court, but as the government explained then, the defendant claimed to have done the same with Nexus several years ago but kept making financial decisions after that, and some of the crimes alleged in the second superseding indictment happened after the defendant purportedly sold his interest in Nexus. Dkt. No. 131-1 at 8:7-9:3, 19:3-13, 20:3-9. Those facts were important to the magistrate judge's conclusion that the proposed condition was insufficient. *Id.* at 25:10-26:2.

> unlikeliness to abide by conditions under § 3148(b)(2)(B)] provides an independent basis for detention, so upholding either finding is sufficient to uphold the District Court's detention order."); *United States v. Patterson*, No. 119-CR-00230, 2020 WL 6200164, *9 (E.D. Cal. Oct. 22, 2020) ("requiring a finding that the defendant is a flight risk or danger [under § 3148(b)(2)(A)] would make (b)(2)(B) superfluous").

Dkt. No. 104 at p.3; Dkt. No. 131-1 at 5:3-10 ("*Manafort* holds that and the *Patterson* case, both of which are in our brief, hold that. That is paragraph 11."). *Manafort* and *Patterson* are not the only cases supporting the government's point, but *Manafort* has the benefit of having been prominently in the press, and *Patterson* nicely explains how the statute works:

> In construing the statute courts are to adhere to the usual axiom that Congress says in a statute what it means and means in a statute what it says there. In doing so we should usually give words their plain, natural, ordinary and commonly understood meanings. Here, it is clear that the Legislature understood the difference between "and" and "or" as they are both used in the statute. Review of the statute demonstrates that at least one condition from section (b)(1) and one condition from section (b)(2) must exist. *If the intent was that both conditions from section (b)(2) must exist then Congress would have used "and" rather than "or" in drafting the statutory language.* Further, requiring a finding that the defendant is a flight risk or danger would make (b)(2)(B) superfluous. It is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.

*Patterson*, 2020 WL 6200164 at *9 (cleaned up and emphasis added). *See also United States v. Okechuku*, 615 F. App'x 190, 191 (5th Cir. 2015) ("given the finding that Okechuku was unlikely to abide by any condition or combination of conditions for release, *see* § 3148(b)(2)(B), it was not necessary for the district court to reevaluate the § 3142(g) factors for release before denying Okechuku's motion"); *United States v. Reulet*, 658 F. App'x 910, 913 (10th Cir. 2016) (upholding detention order on unlikely-to-abide finding and declining to consider, as unnecessary, challenge to flight-and-danger finding); *United States v. Minor*, 204 F. App'x 453, 454 (5th Cir. 2006) (noting that § 3148(b) sets out required findings in disjunctive and holding that "[t]he statute clearly

provides that [unlikely-to-abide] findings alone are sufficient to justify revocation and detention; a court need not also find that the defendant will flee or pose a danger to the community.").

None of the cases cited by the defendant, moreover, stand for the proposition that analysis under the flight-and-danger clause is required in all instances. Indeed, in the *Wilks* opinion, which the defendant cites four times, the Seventh Circuit italicized the same word "or" in § 3148(b)(2) that the government circled above. *United States v. Wilks*, 15 F.4th 842, 847 (7th Cir. 2021). The defendant even cites to that very page in the *Wilks* opinion – that is, page 847 – on the first page of his motion for review. Dkt. No. 131 at 1.

Further, although § 3148 provides that a rebuttable danger-to-person-or-community presumption arises if there is probable cause to believe the defendant committed a Federal, State, or local crime while on release, and although that presumption arose by operation of law here, it is not relevant to the analysis because the government is arguing under the unlikely-to-abide provision only. *See United States v. Aron*, 904 F.2d 221, 224 (5th Cir. 1990) (district court relied on unlikely-to-abide finding rather than danger-to-person-or-community presumption).

E.  **The defendant's continued detention is not a due process problem.**

Finally, the defendant argues that his constitutional right to due process requires release from detention "to prepare for his fast-approaching trial." Dkt. No. 131 at p.6 n.2 (incorporating argument from Dkt. No. 131-2 at Section II); Dkt. No. 131-2 at p.3 (arguing that there are "due process concerns with respect to Mr. Moore having an adequate ability to prepare his defense … because … trial is less than sixty days away").

The defendant relies entirely on *United States v. Speed Joyeros, S.A.*, 204 F. Supp. 2d 412 (E.D.N.Y. 2002). In that case, the defendant was arrested, detained for 15 months, and released three months before trial because she had made "repeated attempts … to retrieve and examine …

many thousands of papers in preparation for trial," important discovery "had not yet been provided to her," and "her incarceration limited her ability to work with her attorneys, accountants, and the necessary calculators and computers required to analyze the extensive business records in this complex case."[3] *Joyeros*, 204 F. Supp. 2d at 419.

In this case, however, the defendant has had years to prepare for trial; most of that time he had his freedom; discovery was timely provided to his attorneys; the defendant declined to receive discovery when he was *pro se* and incarcerated by the Commonwealth; and even then, his appointed advisory counsel did have discovery. Ex. D; *Moore* Dkt. No. 131-1 at 20:17-22:4.

The Court was also clear with the defendant that if he were to obtain new counsel before trial, as he now has, that attorney would need to be prepared to go to trial on December 2.

> Moore is reminded that the trial is set to begin on December 2, 2024, and he should be ready to represent himself at that time. Additionally, if he obtains counsel before trial and that attorney enters an appearance, the attorney should be prepared to go forward on that date.

*Moore* Dkt. No. 91 at p.3.

Last, as stated at the outset, the fact that the defendant will now be in detention for the final two months before trial, just as he has been since April of this year, is not such a departure from the status quo as to raise due process concerns.

## CONCLUSION

Moore is unlikely to abide by the most fundamental condition of release under the Bail Reform Act: Do not commit crimes. Accordingly, the United States respectfully asks the Court to

---

[3] The Second Circuit nonetheless stayed and vacated the order of release and directed the district court to determine whether, under § 3142, any conditions of release would assure the defendant's appearance. *Joyeros*, 204 F. Supp. 2d at 419.

deny the defendant's motion, affirm revocation of his bond and pretrial release, and order him detained.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

/s/ William M. Montague
Trial Attorney
U.S. Department of Justice, Tax Division
150 M Street, N.E.
4 Constitution Square, Mail Stop: 1.1505
Washington, D.C. 20002
Ph:     (202) 616-2386
Email: william.m.montague@usdoj.gov

/s/ Matthew C. Hicks
Matthew C. Hicks, Trial Attorney
U.S. Department of Justice, Tax Division
150 M Street, N.E.
4 Constitution Square, Mail Stop: 1.1313
Washington, D.C. 20002
Ph:     (202) 616-2412
Email: matthew.c.hicks@usdoj.gov

## **CERTIFICATE OF SERVICE**

I certify that on October 31, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Matthew C. Hicks
Matthew C. Hicks
Trial Attorney
