CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

December 05, 2024

LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
   DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Criminal No. 5:21-cr-23 |
| | ) |
| | ) |
| RICHARD E. MOORE | ) |

**MEMORANDUM OPINION AND ORDER**

On November 27, 2024, this case came before the court for a hearing on motions. For the reasons discussed on the record at the hearing, the court continued the trial of this matter until January 6, 2025, effectively granting the relief sought in the motion to continue (Dkt. No. 159), albeit not for all of the same reasons. The court also took under advisement the pending motion in limine to limit the cross examination of witness Neal. (Dkt. No. 146.)

Still pending before the court and addressed herein are the motions of two different movants, Nexus Services, Inc. (Nexus), and Micheal Donovan,[1] both of whom moved to quash or otherwise modify subpoenas issued by the United States in this case. (Dkt. Nos. 155, 156.) The court also rules herein on the United States' emergency motion to subpoena information and records,[2] (Dkt. No. 153), and the defendant's motion to subpoena information and records in advance of trial (Dkt. No. 168).

I. BACKGROUND

The background of this case is well known to the parties, and the court will not recite it

---

[1] Donovan and Moore, who are married, were both officers of Nexus, and Donovan is the person who retained counsel to represent Nexus and file its motion to quash. The court notes the unusual circumstance that Donovan's refusal to waive his own privilege as to any joint privilege he may share with Moore—if successful—would block or hamper his spouse's ability to assert a potentially key defense at trial. Donovan explained that he believed his attorney-client privilege was too important to waive, particularly with the potential of so many documents being produced.

[2] Because the trial now has been postponed, the timing of the motion relative to the trial makes it less of an "emergency." The trial remains only about one month away, however.

all here. In brief, a grand jury returned a second superseding indictment against Moore in September 2024 for willfully failing to account for and pay over Nexus's trust fund taxes to the IRS, in violation of 26 U.S.C. § 7202, and for aiding and assisting in the preparation of false tax returns, in violation of 26 U.S.C. § 7206(2). (Dkt. No. 97.)

At the pretrial conference held on November 20, 2024, Moore confirmed (consistent with suggestions in prior discussions between defense counsel and the United States) that he intended to rely upon an advice-of-counsel defense.[3] As a result, the United States argued (and the court found) that he had waived his attorney-client privilege with regard to the subject matter of the defense. The court allowed the United States to subpoena documents from certain attorneys and law firms that Moore identified at that time: (1) Bomar Law Firm, (2) attorney Kyle Swafford (who was part of the Bomar Law Firm), and (3) the law firm of Williams Mullen. (Order, Dkt. No. 148 (allowing issuance of subpoenas to those entities regarding specific categories of records).)

The order allowing the subpoenas limited the subject matter of the records that could be sought. It was not as broad, for example, as "all tax advice." Instead, the court specifically stated that the documents that the United States could subpoena were: (1) communications with Moore or other executives at Nexus Services on the issue of when and whether Nexus Services should pay trust fund taxes to the IRS; (2) memoranda or notes concerning conversations with

---

[3] The Fourth Circuit described the defense as follows:

> A defendant may use his reliance on the legal advice of counsel "to refute the government's proof that [he] intended to commit the offense." *United States v. Miller,* 658 F.2d 235, 237 (4th Cir. 1981). To be entitled to this defense, the defendant must establish "(a) full disclosure of all pertinent facts to an [attorney], and (b) good faith reliance on the [attorney's] advice." *United States v. Butler,* 211 F.3d 826, 833 (4th Cir. 2000) (quoting *Miller,* 658 F.2d at 237) (internal quotation marks omitted).

*United States v. Powell*, 680 F.3d 350, 356 (4th Cir. 2012).

Moore or other executives at Nexus Services on the same topic; (3) records or information on which the attorney or law firm relied when providing advice concerning when and whether Nexus Services should pay trust fund taxes to the IRS; and (4) retainer agreements and billing records relating to the representation of Moore or Nexus Services in relation to Nexus Services' payroll taxes.  (Dkt. No. 148, at 3.)

Defense counsel subsequently named additional law firms with whom Moore may have discussed the issue of payment of Nexus's trust fund taxes: Bill Gust of Gentry Locke, Michael Hassen (now deceased) and his solo law firm in California, and McGuire Woods.  (Dkt. No. 153-1.)  He further advised that he was "working on more" names of attorneys.[4]  (*Id.*)  In response to that information, the United States filed its emergency motion asking for defendant to provide all attorney and firm names by a date certain and asking to be able to subpoena the newly identified attorneys.  Then, via his witness list, the United States learned the names of other attorneys that Moore listed as witnesses.  (Dkt. No. 160–3 (correspondence from defense counsel listing witnesses including several attorneys).)

At the November 27, 2024 hearing, Moore identified one additional firm from whom he may have received advice concerning payment of Nexus's payroll taxes and advised that there were no other such attorneys.  The United States now asks for subpoenas to be issued to all of the named attorneys and firms.

After the first three subpoenas were issued, but before at least one of the respondents had produced documents,[5] both Nexus and Donovan filed their motions to quash or modify.  Donovan

---

[4] Of course, this information was always within Moore's possession—he should have been aware of those names and able to provide them to counsel.

[5] Apparently, Swafford has responded that there are no such documents, Bomar had already produced its responsive documents (although counsel for the United States stopped its review of that production upon learning of the filing of the motions to quash), and Williams Mullen had not yet produced documents at the time the motions to quash were filed. The parties agreed to wait until the court's ruling on the motions to quash before requiring Williams Mullen to produce its documents.

contends that he had a joint defense agreement with Moore, at least as to Williams Mullen, and he will not waive that attorney-client privilege. Similarly, Nexus contends that Moore was receiving advice as an officer of Nexus and that Nexus has an attorney-client privilege in the documents to be subpoenaed, which it will not waive.

## II.  DISCUSSION

### A.  General Principles

Because Moore is relying on advice-of-counsel as a defense intended to negate willfulness, the United States is entitled to explore what other attorneys may have advised him on the same subject matter. Put differently, his reliance on the defense constitutes an implied waiver of his attorney-client privilege with regard to all communications with all of his attorneys concerning the same topic. *See United States v. Dallmann*, 433 F. Supp. 3d 804, 813 (E.D. Va. 2020); *see also United States v. Under Seal (In re Grand Jury Subpoena)*, 341 F.3d 331, 336 (4th Cir. 2003) (holding that a defendant's statement to the FBI that he relied on his lawyer's advice in filling out an immigration form constituted waiver). The waiver must include that broader disclosure in order to prevent a defendant from using privilege as both a sword and a shield. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) ("[W]hen a party reveals part of a privileged communication to gain an advantage in litigation, the party waives the attorney-client privilege as to all other communications relating to the same subject matter." (citation omitted)). In short, as the *Dallmann* court recognized, an assertion of the advice-of counsel defense waives that privilege with respect to "(i) communications or evidence that the defendant intends to introduce at trial to establish the defense and (ii) communications or evidence that would undermine the defendant's advice-of-counsel defense." 433 F. Supp. 3d at 814. Moore agrees that he has waived his privilege, and he does not dispute that the United States should be permitted to obtain this

4

information. In fact, his counsel stated at the hearing that Moore opposes both motions to quash. And, as noted, Moore has filed his own request to subpoena the same documents. (Dkt. No. 168.)

As the parties asserting a claim of privilege, the burden is upon Nexus and Donovan to establish that the documents are privileged from disclosure. *See Hawkins v. Stables*, 148 F.3d 379, 383 (4th Cir. 1998) ("The burden of proving that a communication falls under the attorney-client privilege rests on the proponent of the privilege."). There are a number of threshold requirements to even find that the attorney-client privilege exists. Summarized, they include that the asserted privilege-holder is a client, the information was communicated to an attorney or her representative and in her capacity as an attorney, the information was shared without the presence of strangers and for the purpose of obtaining legal advice or services, and that the privilege has been claimed and not waived by the client. *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982).

**B. Nexus's Motion to Quash**

A preliminary issue as to as to Nexus's motion is whether it is a valid, ongoing, functioning business such that it can even assert a privilege. Numerous courts have concluded that the privilege does not survive the death of the corporation. *See Express Homebuyers USA, LLC v. WBH Mktg.*, Case No. 18-60166, 2018 WL 4922467, at *2 (S.D. Fla. Feb. 9, 2018) (collecting authority for same and summarizing that under federal law, "the greater weight of authority" holds that "when a corporation ceases to exist, it can no longer assert privilege"); *LTV Steel Co. v. Moran*, 802 F. Supp. 2d 947, 948–49 (N.D. Ill. 2011) ("A completely defunct company should not be allowed to assert privilege, regardless of whether it has technically maintained its legal status."); *Lopes v. Vieira*, 688 F. Supp. 2d 1050, 1069 (E.D. Cal. 2010) (finding no ability to invoke privilege where company was insolvent and inactive and had not

5

complied with state law regarding its required corporate information). And in determining "whether a corporation has 'died,' courts should look to practical business realities rather than technical legal status." *LTV Steel Co.*, 802 F. Supp. 2d at 949. The Fourth Circuit does not appear to have spoken on the issue.[6]

Nexus does not dispute the validity of the foregoing law, but it insists that it is an ongoing business entity. There are certainly indications that Nexus is defunct. For example, Nexus is listed as inactive with the State Corporation Commission in Virginia and listed as administratively dissolved on two entries in the Georgia Corporations Division, and its status on a third entry (with its Verona, Virginia address), is listed as "revoked." (Dkt. Nos. 160-1 & 160-2.) Nexus's counsel points to Delaware records showing that Nexus has been registered there as a corporation since 2023, although counsel admitted at the hearing that Nexus was not in good standing in Delaware; instead, it is listed as tax-delinquent.

If the court were to follow the approach that regardless of whether the corporation technically exists, the court must look to the "practical business realities," *LTV Steel Co.*, 802 F. Supp. 2d at 949, the answer is still unclear. On the one hand, there is an April 2024 Asset and Purchase Agreement, pursuant to which Libre Immigration Services, Inc. (LIS) purchased substantially all of Nexus's assets and liabilities. (Dkt. No. 162-1 (purchase agreement).) Moore's counsel represented to the court at a prior hearing that Nexus is defunct. (Bond Hr'g Tr. 4, Dkt. No. 113 (statement by defense counsel that "Nexus no longer exists in any functional capacity, and has no employees.").) Donovan admitted that at the present time Nexus has no employees, and counsel for Nexus conceded that a company cannot conduct business except

---

[6] *See In Re Grand Jury Investigation*, 352 F. App'x 805, 810 (4th Cir. 2009) (finding it unnecessary to reach the issue and thus declining to decide "whether the attorney-client privilege applies to dissolved corporations").

through its employees.  Likewise, it has only one officer, CEO Donovan, or possibly two.[7]

But Nexus is involved in ongoing litigation, including in *Consumer Financial Protection Bureau v. Nexus Services, Inc. et al.*, No. 5:21-cv-00016 (W.D. Va.) (the "*CFPB* Case"), pending before this court.[8]  Moreover, Donovan insists that, despite the sale of its assets and the fact that it has no employees, Nexus continues to exist.  For support, he points to an allegedly ongoing obligation set forth in a prior order of this court in the *CFPB* Case, No. 5:21-cv-00016, ECF No. 246 (April 1, 2024 Order).  According to that order, defendants in that case (which included Nexus, Donovan, and Moore) were not permitted to disclose certain customer information nor were they permitted to "sell, assign, or otherwise transfer any right to collect payment" from existing customers of Nexus Immigration Bond Services.  *Id.*, ¶ 19, ECF No. 246, at 10.

Pursuant to that obligation, Donovan asserts that Nexus is prohibited from transferring existing customer information to its purchaser, LIS, and it continues to be required to notify prior clients of their court hearing dates.[9]  Donovan advised that he is the person who has taken on the task of notifying "past" customers of their court dates.  Nexus also has provided a six-month old affidavit from Vincent Smith, the CEO of LIS, concerning the operations of LIS and Nexus with regard to Nexus's prior business.

---

[7] Donovan told the court that Evan Ajin remains an officer of Nexus, but the United States represented that Ajin testified before a grand jury that he no longer had any connection to Nexus and was not an officer or employee of the corporation.  Whether Ajin remains an officer of Nexus does not affect the court's conclusions.

[8] The court entered final judgment in that case in April 2024, but defendants (including Nexus, Donovan, and Moore) appealed, and their appeal remains pending before the Fourth Circuit.  Plaintiffs in the *CFPB* Case also have a pending motion before this court in which they request an order to show cause relating to defendants' alleged contempt of this court's permanent injunction.

[9] The court recognizes that whether Nexus in fact transferred its existing customer and client lists and whether its sale to LIS violated the terms of the court's order in the *CFPB* Case is an area of strong disagreement between the parties in that case, and currently the topic of plaintiffs' pending motion for an order directing defendants and LIS to show cause as to why they should not be held in contempt.  Additionally, the *CFPB* plaintiffs have argued to the Fourth Circuit that the sale to LIS was illegal and in contravention of the court's injunction order in that case. The court need not resolve any of those issues here, but notes that they add to the uncertainty of Nexus's status.

Having considered the submissions of the parties and the sparse record before it on the issue, the court cannot definitively state that Nexus has "died." Particularly when coupled with the lack of Fourth Circuit guidance on the issue—and even as to whether a dead corporation may continue to assert the privilege—the court instead assumes without deciding that Nexus is an ongoing entity or that, even if is not, it could continue to assert its privilege. And it is clear (given the Williams Mullen engagement agreement, for example, which is discussed *infra* Section II-C) that Nexus had an attorney-client privilege with regard to at least some of the subpoenaed documents.

The question then becomes whether—as Nexus argues—that privilege is absolute or whether—as the United States argues—the court must engage in a balancing test. On this issue, and recognizing that the Fourth Circuit has not spoken on it, the court concludes that the United States has the stronger argument. In short, the court finds unpersuasive the reasoning in *United States v. Wells Fargo*, 132 F. Supp. 3d 558 (S.D.N.Y. 2015), a civil case, on which Nexus relies. The *Wells Fargo* court concluded that courts should not engage in balancing act in similar circumstances but should simply apply an absolute rule regarding attorney-client privilege. *See also* Benjamin E. Rosenberg, *The Abrogation of Corporate Privilege in Cases Against Employees*, 71 U. Kan. L. Rev. 417, 424–27 (2023) (arguing that *Swidler & Berlin v. United States*, 524 U.S. 399 (1998), a civil case, does not foreclose balancing in this context and that *Wells Fargo* erred in concluding to the contrary). In applying a balancing test, the court recognizes the role and importance of the attorney-client privilege. Thus, the court concludes that the proper approach is for the court to receive and review the subpoenaed documents in camera, rather than simply allowing the United States (or Moore) to obtain the documents in the first instance. Moreover, there is an apparent agreement—at least between the United States and Moore and as an alternative by Nexus—in proceeding in this fashion.

Accordingly, the court will follow the example of the courts in *United States v. W.R. Grace,* 439 F. Supp. 2d 1125 (D. Mont. 2006), and *United States v. Mix*, No. 12-171, 2012 WL 2420016 (E.D. La. June 26, 2012), and weigh the value of the exculpatory evidence sought to be introduced by the defendant against the weight of the policy behind the attorney-client privilege which generally requires exclusion. *See also United States v. Herrell*, No. 6:21-cr-00013-GFVT, 2024 WL 2954408 (E.D. Ky. June 12, 2024) (concluding that "the attorney client privilege may be pierced if a criminal defendant's interest in his Sixth Amendment rights outweigh the privilege-holder's interest in maintaining the privilege").

One commentator explained the approach of the *W.R. Grace* court as follows:

> [I]n *United States v. W.R. Grace*, the district court reviewed the privileged evidence and, after applying the balancing test, held that depending on the proof at trial, some of the documents submitted may "be of such probative and exculpatory value as to compel admission of the evidence over [the corporation's] objection as the attorney-client privilege holder." The court concluded that the determination of which documents would be admissible would "be made on a document-by-document basis at trial." During the trial, the court would determine the probative value of each bit of evidence in the context of the government's case, and would "likely" sacrifice privilege in "limited instances." In further recognition of the corporation's privilege, the court explained that it would "make clear that the privilege is abrogated over [the corporation's] objection and that the compelled trial disclosure does not constitute a blanket waiver of" the corporation's privilege.

Susan B. Heyman, *Corporate Privilege and an Individual's Right to Defend*, 85 Geo. Wash. L. Rev. 1112, 1149–50 (2017) (internal footnotes omitted). As in *W.R. Grace*, the court believes the best approach is for the court to conduct this analysis and to do so *in camera*. *See also United States v. Rainone*, 32 F.3d 1203, 1206–07 (7th Cir. 1994) (reviewing privileged communications *in camera* to assess how fundamentally it affected the defendant's Sixth Amendment confrontation after noting that even the attorney-client privilege "might have to yield in a particular case" to the constitutional rights of a criminal defendant).

Thus, Nexus's motion to quash will be granted in part and denied in part. It will be denied insofar as it asks the court to quash the subpoena altogether, but the court will grant the alternative relief sought, which is for the court to receive the documents responsive to the subpoenas and for the court to review them *in camera* to determine whether Moore's right to assert the defense (as well as the government's corresponding right to rely on evidence undermining that defense) outweighs Nexus's privilege as to any of them.

## C. Donovan's Motion to Quash[10]

In his own motion to quash, Donovan asserts (albeit not under oath) that the documents sought by the subpoena "may elicit communications that were had under joint defense and common privilege agreements." (Dkt. No. 155, at 2.) He asserts that in October 2019, Nexus entered a joint defense and common privilege agreement with him and Moore and that Moore and Nexus were represented by Williams Mullen at the time." (*Id.* at 3.) He claims that he has not waived any privilege in his personal capacity and that Moore may not unilaterally waive the privilege for any documents subject to the "common interest rule" or "joint defense privilege." (*Id.*)

The Fourth Circuit has recognized that "persons who share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims" without waiving privileged attorney-client

---

[10] In addition to the legal arguments addressed below, Donovan expressed frustration at the hearing that he had not been consulted by the United States about the subpoenas or the documents it sought via subpoena. He suggested that if the government had contacted him, the result might have been different. He also seemed concerned about the breadth of the subpoenaed information, referring to the information sought as broadly relating to "tax matters" and suggesting that it would allow the government "to come in and read all the emails with every lawyer [he had] ever had." His comments overlook the fact that the subpoenas were not only directed at specific lawyers or firms, but also—most importantly—that they only sought narrow categories of documents. Specifically, as noted, information was sought concerning communications, notes, and billing records about whether and when pay trust fund taxes to the IRS; (2) memoranda or notes concerning conversations with Moore or other executives at Nexus Services on the same topic; (3) records or information on which the attorney or law firm relied when providing advice concerning when and whether Nexus Services should pay trust fund taxes to the IRS; and (4) retainer agreements and billing records relating to the representation of Moore or Nexus Services in relation to Nexus Services' payroll taxes.

communications. *In re Grand Jury Subpoenas 89–3 & 89–4,* 902 F.2d 244, 249 (4th Cir. 1990). This "joint defense" or "common interest" doctrine is an extension of the attorney-client privilege and "presupposes the existence of an otherwise valid privilege." *Id.* In this context the communications between each of the clients and the attorney are privileged against third parties, and it is unnecessary that there be actual litigation in progress for this privilege to apply. *United States v. Aramony,* 88 F.3d 1369, 1392 (4th Cir. 1996). Donovan's motion accurately states that, for documents subject to such a privilege, one of the parties may not unilaterally waive the privilege. *See In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990) ("A joint defense privilege cannot be waived without the consent of all parties who share the privilege." (citation omitted).)

"To be entitled to the protection of this privilege, the parties must first share a common interest about a legal matter." *Id.* Notably, though, it is not enough that two persons are represented by the same attorney at the same time:

> Employing joint counsel may be evidence that a common interest exists, but it does not create one [ . . . .] Although in certain instances courts have used same counsel as *evidence* of a common interest, it is certainly not dispositive. "Concurrent representation of two clients is not enough to make them joint clients for purpose of the privilege. The lawyer must be 'retained or consulted in common' on a matter of 'common interest.'" David M. Greenwald, et al., *Testimonial Privileges* § 1:79 (3d ed.2005).

*Neuberger Berman Real Est. Income Fund, Inc. v. Lola Brown Tr. No. 1B*, 230 F.R.D. 398, 415–17 (D. Md. 2005).

Critically, Donovan has presented nothing other than his own unsworn assertion that he and Moore had a joint defense agreement with regard to representation by two firms—Williams Mullen and Hunton Williams. No such written agreement has been presented to the court, and no representations about the specifics of any such agreement—such as dates or the terms—were presented by Donovan, either. Attached to Nexus's reply were two "engagement agreements"

between it and Williams Mullen, but those do not support any assertion of a joint privilege for Donovan as an individual.

The first, dated August 3, 2017, is an unexecuted copy of an agreement in which Williams Mullen purports to offer its services to Nexus with regard to an appeal of an adverse judgment against it in *Shrewsbury v. Entertainment by Nexus, Inc.*, Case No. CL16-002082 (Augusta Co. Cir. Ct.).[11]  (Dkt. No. 162-4.)  An earlier opinion in that case, however, makes clear that the case did not involve the same topics as the subject-matter waiver here.  That case was filed by the Commissioner of Revenue of Augusta County, Virginia, against Nexus and other related entities to compel them to comply with two summonses.  *Shrewsbury v. Entertainment by Nexus, Inc.*, No. CL16002082-00, 95 Va. Cir. 207, 2017 WL 10966343, at *1 (August Cir. Ct. Feb. 27, 2017).  The summonses sought information and documentation only in regard to the assessment of two local taxes—a Business, Professional and Occupational License tax, and a tangible business property tax.  (*Id.*)  That case did not involve federal payroll taxes payable by Nexus, which would be the subject matter of the waiver here.  Nor would the scope of the subpoenas encompass attorney-client communications related to local taxes.

The second, dated April 19, 2019, is an unexecuted copy of an agreement in which Williams Mullen agrees to represent "Nexus Services Inc. and Libre by Nexus in connection with the subpoenas issued by the U.S. Department of Justice, Tax Division in the U.S. District Court, Western District of Virginia."  (Dkt. No. 162-5, at 1.)  The letter enclosing that agreement, however, specifically states that the representation does not include "the representation of any individual.  This is for representation of the entities only."  (*Id.*)  Thus, this letter provides no evidence that Donovan, in his personal capacity, had an attorney-client

---

[11] Based on a review of publicly available case information, the petition for review filed by Nexus with the Supreme Court of Virginia was refused on March 13, 2018.  *See generally* Docket, Case No. 17-1475 (Va.).

relationship with Williams Mullen on a matter of joint legal interest with Moore.

Donovan did not offer any other evidence (or even claim, except in general terms) that he had privileged communications with any of the other attorneys named as subpoena recipients by the United States that are subject to a joint interest agreement. Nor does he provide any information (such as the dates or terms) of any such agreement. In short, Donovan has wholly failed to meet his burden to show that he has an attorney-client privilege in the information sought in the subpoenas. Accordingly, the court will not grant his motion to quash or modify the subpoenas.

**D.   Motion for Additional Subpoenas by United States**

The court turns next to the United States' second request to subpoena documents, which Moore has advised he does not oppose. In its motion, the United States had asked that Moore be required to provide the names of all counsel he consulted concerning when and if to pay payroll taxes for Nexus. At the November 27 hearing, Moore's counsel identified some additional names (both from his witness list and orally (Hunton Williams, now Hunton Andrews Kurth). He has further represented that there are no other names.

With regard to the identified witnesses who are attorneys or law firms or whose names were given as potential attorneys from whom Donovan sought advice concerning Nexus's payroll taxes, the court will allow the United States to subpoena relevant documents and direct their return to the court for *in camera* review.

**E.   Moore's Motion to Subpoena Information**

Moore also has filed a motion in which he asks to issue his own subpoenas for the "identical" documents being sought by the United States. (Dkt. No. 168.) In light of the court's rulings above, it appears that his motion is moot and so it will be denied as moot.

To the extent Moore is asking to issue duplicate subpoenas with responsive documents

13

produced to him, his motion will be denied. Given the court's intention to review all responsive documents *in camera*, there is no reason to ask for the same documents twice. Moreover, it is possible that—for some of those documents—Moore does not have an attorney-client privilege as to them and only Nexus does. The court must make that determination and engage in the balancing discussed above before allowing Moore or the United States access to those documents. Furthermore, to the extent Moore had his own attorney-client relationship with any lawyer or law firm, it is not necessary for him to subpoena records from them; he may seek copies of his case file from those attorneys, just as any client could.

### III. SUMMARY AND ORDER

For the reason set forth in this opinion, it is hereby ORDERED as follows:

1. Nexus's motion to quash (Dkt. No. 156) is DENIED IN PART and GRANTED IN PART.
    a. The motion is DENIED insofar as it asks to quash the subpoenas entirely; and
    b. The motion is GRANTED insofar as it seeks the alternative relief of having responsive documents be produced directly to the court for *in camera* review.
2. Pro se movant Micheal Donovan's motion to quash (Dkt. No. 155 ) is DENIED.
3. Williams Mullen, Kyle Swafford, and the Bomar Law Firm shall produce any responsive documents not previously produced not later than December 9, 2024, and shall provide them directly to the Court. As to those documents that the United States possesses but stopped reviewing upon receipt of the motions to quash, the United States shall provide all copies of those documents it possesses to the court for *in camera* review.
4. The United States' second motion to subpoena information and records (Dkt. No. 153) is GRANTED IN PART and DENIED IN PART as moot.

    a. The motion is DENIED as moot insofar as it seeks to require Moore to provide the names of all attorneys he consulted because Moore has already done so; and

    b. The motion is GRANTED insofar as it asks permission to subpoena information and records in advance of trial, both as to the attorneys and law firms identified in that motion (Bill Gust of Gentry Locks, Michael Hassen (now deceased) and his law firm in California, and McGuire Woods) and as to attorneys or law firms identified by Moore's counsel either on his witness list or at the November 27, 2024 hearing.

5. The United States may issue subpoenas to the lawyers and law firms as described in the preceding paragraph (paragraph 4b) and may require the recipients to produce responsive records that include: (1) communications with Moore or other executives at Nexus Services on the issue of when and whether Nexus Services should pay trust fund taxes to the IRS; (2) memoranda or notes concerning conversations with Moore or other executives at Nexus Services on the same topic; (3) records or information on which the attorney or law firm relied when providing advice concerning when and whether Nexus Services should pay trust fund taxes to the IRS; and (4) retainer agreements and billing records relating to the representation of Moore or Nexus Services in relation to Nexus Services' payroll taxes. All responsive documents shall be produced *only* to the court for *in camera* review.

6. The attorneys and law firms may be required to produce the subpoenaed documents no later than Friday, December 13, 2024.

7.  Moore's motion to subpoena information and records (Dkt. No. 168) is DENIED as moot.

Entered: December 5, 2024.

                                                   */s/ Elizabeth K. Dillon*
                                                   Elizabeth K. Dillon
                                                   Chief United States District Judge