IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 5:21-cr-23 |
| | ) | |
| RICHARD E. MOORE | ) | |

## UNITED STATES' TRIAL BRIEF

Richard Moore, former executive vice president and co-owner of Nexus Services, Inc., is charged with 16 counts of failing to truthfully account for and pay over to the United States the federal income taxes, Social Security taxes, and Medicare taxes—known collectively as trust fund taxes—that Nexus withheld from its employees' wages, in violation of 26 U.S.C. § 7202. He is also charged with two counts of aiding and assisting in the preparation and presentation of a false tax return, in violation of 26 U.S.C. § 7206(2). Trial is set for January 6, 2025. The government submits this brief to advise the Court of its theory of the case, procedural history, governing law, some of its anticipated evidence, and potential evidentiary issues.

## I.    THEORY OF THE CASE

For years, Moore was an executive at Nexus. Nexus had employees, and when it paid its employees, it withheld trust fund taxes. Moore was responsible for filing the federal tax returns for those taxes and paying them over to the Internal Revenue Service. Sometimes he did, and sometimes he didn't. Ex. 600. When he didn't, it wasn't because he forgot or made an honest mistake. It was because he wanted to spend those withheld taxes on other things, like all-employee events in Orlando and Las Vegas, expensive cars, a beautiful wedding for him and his partner, and big salaries for them both. Ex. 610. Over the course of ten years, the defendant spent $11.66 million on luxuries like that and failed to pay $2.25 million in taxes to the IRS. Ex. 611.

## II.     PROCEDURAL HISTORY

Moore was indicted three years ago on December 9, 2021. Dkt. No. 1. He was charged with 10 counts of failing to truthfully account for and pay over trust fund taxes to the United States for the following 10 calendar quarters:

| Count | Calendar Quarter Ending | Due Date of Form 941 |
|---|---|---|
| 1 | March 31, 2015 | April 30, 2015 |
| 2 | June 30, 2015 | July 31, 2015 |
| 3 | September 30, 2015 | October 31, 2015 |
| 4 | March 31, 2017 | April 30, 2017 |
| 5 | June 30, 2017 | July 31, 2017 |
| 6 | June 30, 2019 | July 31, 2019 |
| 7 | September 30, 2019 | October 31, 2019 |
| 8 | December 31, 2019 | January 31, 2020 |
| 9 | March 31, 2020 | April 30, 2020 |
| 10 | December 31, 2020 | January 31, 2021 |

Two years after that, in November 2023, the grand jury superseded the indictment and added two counts of aiding and assisting in the preparation and presentation of a false tax return because Moore caused Nexus to issue Forms W-2 to him and his spouse for 2019 and 2020 knowing that the federal income taxes shown as withheld on those W-2s had not been paid over to the IRS. Consequently, as Moore intended, the total tax payments on his and his spouse's joint federal income tax returns were overstated, falsely reduced the amounts they owed the IRS for those two years, and resulted in a refund from the IRS for both years. Dkt. No. 50.

Last, in September 2024 the grand jury superseded a second time to add six more counts of failing to truthfully account for and pay over trust fund taxes for Nexus employees to the United States for the following six calendar quarters:

| Count | Calendar Quarter Ending | Due Date of Form 941 |
|---|---|---|
| 13 | December 31, 2022 | January 31, 2023 |
| 14 | March 31, 2023 | April 30, 2023 |
| 15 | June 30, 2023 | July 31, 2023 |
| 16 | September 30, 2023 | October 31, 2023 |
| 17 | December 31, 2023 | January 31, 2024 |
| 18 | March 31, 2024 | April 30, 2024 |

Dkt. No. 97. Notably, the defendant committed all six of these crimes after his 2021 arraignment on the original indictment for violations of the exact same law (that is, 26 U.S.C. § 7202), making it even more likely that his 10 previous failures to truthfully account for and remit trust fund taxes were willful.

### III.    LAW OF OFFENSES CHARGED

Most of the counts in the second superseding indictment (16 out of 18) charge Moore with violating 26 U.S.C. § 7202, while only two counts charge him with violating 26 U.S.C. § 7206(2), so this brief will now explain the law for § 7202.[1]

#### A.  Failure to Truthfully Account for and Pay Over Tax

Section 7202 holds criminally liable…

> [a]ny person required under this title to collect, account for, and pay over any tax imposed by this title who willfully fails to collect or truthfully account for and pay over such tax….

26 U.S.C. § 7202. "This title" means Title 26 of the United States Code, which is the Internal Revenue Code, and it requires employers to collect federal income taxes and Federal Insurance Contribution Act (FICA) taxes, also known as Social Security and Medicare taxes, from their employees' wages. *United States v. Persinger*, No. 7:20-CV-767, 2022 WL 256335, *2 (W.D. Va. Jan. 26, 2022) (Dillon, J.); 26 U.S.C. § 3402(a) (income taxes) and § 3102(a) (FICA taxes); *United States v. McLain*, 597 F. Supp. 2d 987, 995 (D. Minn. 2009) ("this title" in § 7202 means the Internal Revenue Code). These taxes are called "trust fund taxes" because the employer must hold them in trust for the United States and pay them over to the IRS. 26 U.S.C. § 7501(a) (withheld taxes must be held "in trust for the United States"); § 3403 (employer liable for payment of

---

[1] Because the defendant moved to exclude evidence of nontax expenditures as irrelevant, Dkt. No. 185, the United States has already had occasion to explain the law on § 7202, Dkt. No. 188, pp. 2-10. That explanation (in nearly identical form) is repeated here so the law for both categories of counts—§ 7202 and § 7206(2)—resides in one document for easy reference. To skip to the explanation of § 7206(2) law, please turn to page 11.

withheld income taxes); § 3102(b) (employer liable for payment of withheld FICA taxes). And employers must truthfully account for trust fund taxes by filing complete and accurate Forms 941, which are the employer's quarterly federal tax returns. 26 U.S.C. § 6011(a); 26 C.F.R. § 31.6011(a)-4(a)(1) (income taxes); 26 C.F.R. § 31.6011(a)-1(a)(1) (FICA taxes).

If a business fails to collect, truthfully account for, or pay over trust fund taxes, the IRS can pursue not only the business but also, crucially for present purposes, any people at the business who should have collected, truthfully accounted for, or paid over the taxes. Such "responsible persons" may be held civilly liable for a financial penalty equal to the full amount of the unremitted taxes under 26 U.S.C § 6672 and criminally liable under § 7202.[2] 26 U.S.C. § 7501(b); *United States v. Lord*, 404 F. App'x 773, 775 (4th Cir. 2010).

These two statutes were designed to ensure "compliance by the employer with its obligation to withhold and pay the sums withheld, by subjecting the employer's officials responsible for the employer's decisions regarding withholding and payment to civil and criminal penalties for the employer's delinquency." *Slodov v. United States*, 436 U.S. 238, 247 (1978); *see United States v. Barringer*, 25 F.4th 239, 258 n.13 (4th Cir. 2022) ("Sections 6672 and 7202 effectively operate in tandem. While § 6672 provides for civil liability and penalties for failure to pay taxes, § 7202 subjects the perpetrator to a felony conviction."). Sections 6672 and 7202, in other words, are two sides of the same coin, and decisions interpreting one are often helpful in construing the other.[3] *Lord*, 404 F. App'x at 775 (relying on *Plett v. United States*, 185 F.3d 216

---

[2] Despite the availability of a civil remedy under § 6672, the United States is not required to pursue it or any other remedy, including any remedy against the business, before initiating a criminal prosecution against a responsible person under § 7202. *McLain*, 597 F. Supp. 2d at 990 ("Nothing in any statute or judicial opinion requires the government to proceed against an individual civilly under § 6672(a) before bringing a criminal prosecution under § 7202."); *see United States v. DeMuro*, 677 F.3d 550, 565 (3d Cir. 2012) (approving exclusion of argument that IRS should have pursued trust-fund-tax matter civilly rather than criminally because it would invite jury nullification).

[3] The relevant language of the two statutes is largely the same. Section 6672 imposes civil liability on "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such

(4th Cir. 1999), a § 6672 case, to interpret the responsible-person requirement under § 7202); *Barringer*, 25 F.4th at 258 n.13 (recognizing the Fourth Circuit's reliance in *Lord* on § 6672 to interpret § 7202). Accordingly, this brief contains citations to cases interpreting both statutes.

To convict a defendant of willfully failing to collect, truthfully account for, or pay over trust fund taxes, the government must prove that (1) the defendant had a duty to collect, truthfully account for, and pay over a trust fund tax; (2) the defendant failed to collect or truthfully account for or pay over that trust fund tax; and (3) the failure was willful.[4] *Lord*, 404 F. App'x at 775; *United States v. Boccone*, 556 F. App'x 215, 238 (4th Cir. 2014) (unpublished).

### 1. Duty as Responsible Person to Collect, Truthfully Account for, and Pay Over Trust Fund Taxes

First, some nomenclature. As explained above, the federal income taxes, Social Security taxes, and Medicare taxes that an employer withholds from its employees' wages are known as "trust fund taxes" because they are held in trust for the United States until they are remitted to the IRS. Similarly, a person who is required to collect, truthfully account for, and pay over trust fund taxes, as contemplated by § 6672 and § 7202, is known as a "responsible person." *Slodov*, 436 U.S. at 246 n.7 ("The cases which have been decided under § 6672 generally refer to the 'person required to collect, truthfully account for, and pay over any tax imposed by this title' by the shorthand phrase 'responsible person.'"); *Plett*, 185 F.3d at 218-19; *Lord*, 404 F. App'x at 775.

What makes a person a "responsible person" is the authority and power, as a practical matter, to cause the business to comply with its legal obligations to withhold trust fund taxes from

---

tax, or truthfully account for and pay over such tax…." 26 U.S.C. § 6672. The principal difference between the statutes is what constitutes willfulness, with § 7202 incorporating the criminal standard and § 6672 incorporating the civil one.

[4] Although the amount of "the tax not collected or accounted for and paid over" under § 7202 is required at sentencing, USSG § 2T1.6, no proof of it is required at trial, *United States v. Pflum*, 150 F. App'x 840, 844 (10th Cir. 2005).

its employees' wages, file the necessary tax returns reporting those wages and trust fund taxes, and

remit the withheld trust fund taxes to the IRS:

> To determine who within a company is a "responsible person" under § 6672, we undertake a pragmatic, substance-over-form inquiry into whether an officer or employee so participated in decisions concerning payment of creditors and disbursement of funds that he effectively had the authority—and hence a duty—to ensure payment of the corporation's payroll taxes. Stated differently, the crucial inquiry is whether the person had the effective power to pay the taxes—that is, whether he had the actual authority or ability, in view of his status within the corporation, to pay the taxes owed.

*Plett*, 185 F.3d at 219 (cleaned up); *United States v. Bailey*, 216 F. App'x 378, 382 (4th Cir. 2007).

The Fourth Circuit takes a broad view of who is a responsible person. *Plett*, 185 F.3d at

219 ("§ 6672 casts a broad net over many persons in imposing liability for delinquent payroll

taxes") (cleaned up). Both § 6672 and § 7202 explicitly state that the duty applies to "any" person

required to collect, account for, and pay over trust fund taxes, and often there is more than one

person in a company who is responsible for ensuring compliance with those legal obligations. *Id.*

("[T]he 'responsible person' is not limited to one person in a company but rather may include

many persons connected with the same employer. … There may be—indeed, there usually are—

multiple responsible persons in any company"). The duty is also not limited to the person most

responsible. *Erwin*, 591 F.3d at 324 (holding that "§ 6672 imposes liability on *all* responsible

persons, not just the *most* responsible person.") (cleaned up; emphasis in original).[5] And, notably

given that the defendant has already blamed Rebecca Neal (Dkt. No. 185, p. 5) and might blame

others, the duty may not be delegated away. *Id.* at 322 ("delegation will not relieve one of

responsibility").

---

[5] The defendant says he will put on evidence to show "who really was the responsibly [sic] person under governing law." Dkt. No. 185, p. 6. From this, it appears the defendant may intend to argue that there can be only one responsible person or that only the most responsible person has a duty to file Forms 941 and pay over trust fund taxes. Because this would be a misstatement of law and an invitation to jury nullification, the Court should exclude any such argument.

To be considered responsible for purposes of § 6672 and § 7202, a person need not even know that there has been a failure to collect, account for, or pay over trust fund taxes. *Barnett v. I.R.S.*, 988 F.2d 1449, 1454 (5th Cir. 1993). This broad view of responsibility encourages those in power to "stay abreast of the company's withholding and payment of [trust fund taxes]," and it keeps the door closed on "a host of evasive tactics." *Id.* at 1456-57.

To determine whether a person has the requisite authority and power, the Fourth Circuit looks primarily to six factors:

> Several factors serve as indicia of the requisite authority, including whether the employee (1) served as an officer of the company or as a member of its board of directors; (2) controlled the company's payroll; (3) determined which creditors to pay and when to pay them; (4) participated in the day-to-day management of the corporation; (5) possessed the power to write checks; and (6) had the ability to hire and fire employees.

*Plett*, 185 F.3d at 219; *Bailey*, 216 F. App'x at 382. This six-factor list is not comprehensive; other factors that go to a person's authority and power can be considered. *Erwin v. United States*, 591 F.3d 313, 321 (4th Cir. 2010) (Fourth Circuit has "developed a non-exhaustive list of factors to consider" in determining whether person is responsible person); *see, e.g., O'Connor v. United States*, 956 F.2d 48, 51 (4th Cir. 1992) (considering whether person was owner, received salary, and had office space at company); *United States v. Carrigan*, 31 F.3d 130, 133 (3d Cir. 1994) (considering whether defendant ever signed company's federal quarterly tax returns or other company tax returns).

In addition, a person need not meet all six factors to be a responsible person. *Johnson v. United States*, 734 F.3d 352, 363 (4th Cir. 2013) (person was responsible person even though she was not "running the day-to-day operations of the corporation"). Conversely, satisfying some but not all six factors does not necessarily make a person a responsible person. *See O'Connor*, 956

7

F.2d at 51 (despite 50% ownership, title that sounded important, and ability to sign checks, person was not responsible person given other facts). In sum, the question of whether a person is a responsible person must be answered by the totality of circumstances. *Erwin*, 591 F.3d at 321 ("No single factor controls; rather, we consider the totality of the circumstances").

Finally, if a person has the authority to exercise "significant, although not necessarily exclusive or final, control" over a company's financial affairs, regardless of whether he actually exercises that authority, he is a responsible person. *Barringer*, 25 F.4th at 258; *Johnson*, 734 F.3d at 362. Likewise, if a person could, if he wished to exert his authority, have "substantial" input into decisions about paying creditors or collecting, accounting for, and paying over trust fund taxes, he is a responsible person. *Barnett*, 988 F.2d at 1455. Again, the essential inquiry is whether the person has the power as a practical matter—the actual authority or ability—to withhold trust fund taxes from employees' wages, file tax returns accounting for those withheld trust fund taxes, and remit the withheld trust fund taxes to the IRS.

## 2. Failure of Duty

To be found guilty of violating § 7202, the responsible person must also fail in his legal duty. And although § 7202 states in part that it is violated when a responsible person willfully fails to "truthfully account for and pay over … tax," which could be read as requiring a failure of both acts to constitute a violation of the statute, a willful failure to do either suffices. *See, e.g., United States v. Sertich*, 879 F.3d 558, 562 (5th Cir. 2018) ("[W]e now agree with every other circuit to have considered this issue and hold that § 7202 is violated if a defendant willfully fails to *either* truthfully account for taxes *or* pay them over.") (emphasis in original); *U.S. v. Gilbert*, 266 F.3d 1180, 1183-1185 (9th Cir. 2001) (agreeing with government's argument that "§ 7202 is violated by the failure to account for *or* pay over withholding tax") (emphasis in original); *Boccone*, 556

F. App'x at 238 (citing *Gilbert* and affirming § 7202 conviction solely for failure to pay); *cf. Slodov*, 436 U.S. at 246-47. The conjunction in the phrase "truthfully account for and pay over" creates a "dual obligation" to truthfully account for trust fund taxes and to pay over those trust fund taxes. And both parts of that unitary obligation must be satisfied. *Sertich*, 879 F.3d at 563.

Consequently, a person who collects and truthfully accounts to the IRS for taxes withheld from employee pay but then spends those trust fund taxes on fast cars and fine dining does not escape the statute's reach.

### 3. Willfulness

The responsible person's failure of duty must be more than negligent; it must be willful. Willfulness for purposes of federal tax crimes is a voluntary and intentional violation of a known legal duty.[6] *Cheek v. United States*, 498 U.S. 192, 201 (1991); *United States v. Morrison*, 32 F. App'x 669, 671 (4th Cir. 2002) (same). Ignorance of the law or a misunderstanding of it is therefore a defense. *United States v. Grunewald*, 987 F.2d 531, 535 (8th Cir. 1993) ("A defendant may claim as a defense that, because of a misunderstanding of the law, he had a good faith belief that he was not violating any of the provisions of the tax laws."). But a jury may "consider the reasonableness of the defendant's asserted beliefs in determining whether the belief was honestly or genuinely held." *Id.* At 536. And "the more unreasonable the asserted beliefs or misunderstandings are, the more likely the jury will consider them to be nothing more than simple disagreement with known legal duties imposed by the tax laws and will find that the Government has carried its burden of proving knowledge." *Cheek*, 498 U.S. at 203-04.

---

[6] Proof of bad faith or evil intent is not required. *United States v. Pomponio*, 429 U.S. 10, 13 (1976); *Morrison*, 32 F. App'x at 671.

In addition, because there is rarely direct proof of willfulness, such as a confession, willfulness may be inferred from proof of the defendant's conduct and the surrounding circumstances. *See, e.g., United States v. Bishop*, 264 F.3d 535, 550 (5th Cir. 2001).

In § 7202 prosecutions, a responsible person's knowledge of the legal duty to collect income, Social Security, and Medicare taxes can often be inferred from the fact that the company has in fact withheld trust fund taxes from its employees' wages. Knowledge of the duty to truthfully account for trust fund taxes can usually be inferred from the company's filing of at least one Form 941, the quarterly tax return that accounts for trust fund taxes. And knowledge of the duty to pay over trust fund taxes to the IRS can typically be inferred from the company having remitted trust fund taxes to the IRS at least once.

That the failure of these known legal duties was voluntary and intentional can be inferred from a pattern of failing to collect, account for, or pay over trust fund taxes for an extended period. *Lord*, 404 F. App'x at 779. Willfulness can also be inferred from, among other things, circumventing normal recordkeeping procedures by reversing entries that would result in a tax liability, *Bishop*, 264 F.3d at 552; providing a return preparer with inaccurate or incomplete information, *id.*; using nominees, *id.* at 550; concealing bank accounts, *United States v. Ratner*, 464 F.2d 101, 105 (9th Cir. 1972); prior and subsequent similar acts reasonably close in time to the alleged offense, *United States v. Taylor*, 305 F.2d 183, 185 (4th Cir. 1962); and the defendant's attitude toward the reporting and payment of taxes generally, *id.* at 185-86.[7]

For failure to pay over trust fund taxes specifically, the mere payment of *anything* other than the withheld trust fund taxes—such as the company's electric bill, office lease, or wages to

---

[7] In this case, as mentioned above, willfulness is also shown by the defendant having committed six violations of § 7202 after his 2021 arraignment on the original indictment for violations of the same law, making it even more likely that his 10 previous failures to truthfully account for and remit trust fund taxes were willful.

employees—is enough to establish willfulness if the defendant knows that trust fund taxes are due

to be paid over to the IRS.

> The intentional preference of other creditors over the United States
> is sufficient to establish the element of willfulness. Even if other
> expenditures were necessary for operation of the business, this does
> not undermine a finding of willfulness. Indeed, paying wages and
> satisfying debts to creditors in lieu of remitting employment taxes
> to the IRS, constitute circumstantial evidence of a voluntary and
> deliberate violation of § 7202.

*Boccone*, 556 F. App'x at 239 (4th Cir. 2014) (cleaned up)[8]; *see also Persinger*, 2022 WL 256335

at *1 (defendants' failure to pay trust fund taxes was willful because they knowingly "paid

employees and other creditors, such as utility companies and suppliers, instead of the United

States").[9]

## B. Aiding and Assisting in the Preparation and Presentation of a False Tax Return

Two counts in the second superseding indictment charge Moore with violating 26 U.S.C.

§ 7206(2). That statute makes it a felony to:

> [w]illfully aid[] or assist[] in … the preparation or presentation
> under … the internal revenue laws, of a return … which is fraudulent
> or is false as to any material matter, whether or not such falsity or
> fraud is with the knowledge or consent of the person authorized or
> required to present such return….

26 U.S.C. § 7206(2). Section 7206(2)'s principal target has traditionally been fraudulent tax return

preparers. *See, e.g., United States v. Kelley*, 105 F.2d 912, 917 (2d Cir. 1939) (L. Hand, J.) ("The

purpose [of the statutory predecessor to § 7206(2)] was very plainly to reach the advisers of

---

[8] This point is uncontroversial, but because the defendant moved to exclude evidence of nontax expenditures, the government discussed it in depth in those briefings. Dkt. No. 188, pp. 10-13; Dkt. No. 190-1, pp. 1-7.

[9] However harsh it may seem that payment of taxes to the IRS takes priority over payment of wages to employees, the United States—which is to say the people of the United States—cannot be made "an unwilling partner in a floundering business" (or even in a healthy one) by a responsible person's unilateral decision to break the law. *Erwin*, 591 F.3d at 319. Nor should law-abiding businesses have to compete against tax-cheating businesses that have greater resources because of the tax crimes they commit.

taxpayers who got up their returns, and who might wish to keep down the taxes because of the credit they would get with their principals, who might be altogether innocent."); *United States v. Varens*, No. 5:18-CR-00027, 2020 WL 4227563, *1 (W.D. Va. July 22, 2020) (Dillon, J.) (tax return preparer who overstated deductions on clients' returns convicted of 13 counts of violating § 7206(2)). But § 7206(2) is not limited to return preparers and "reaches all knowing participants in the fraud." *United States v. Fletcher*, 322 F.3d 508, 514-15 (8th Cir. 2003).[10]

Consequently, a defendant need not prepare, sign, or file the false tax return. *United States v. Nealy*, 729 F.2d 961, 963 (4th Cir. 1984) (need not prepare); *United States v. Clark*, 577 F.3d 273, 285 (5th Cir. 2009) (need not sign); *United States v. Mudekunye*, 646 F.3d 281, 286 (5th Cir. 2011) (need not file). "All that is required," the Fourth Circuit has said, is that the defendant "knowingly participate in providing information that results in a materially fraudulent tax return." *Nealy*, 729 F.2d at 963.

To convict a defendant of aiding or assisting in the preparation or presentation of a false tax return, the government must prove that (1) the defendant aided, assisted, procured, counseled, or advised the preparation or presentation to the IRS of the tax return in question; (2) the tax return was false or fraudulent as to a material matter; and (3) the act of the defendant was willful.[11] *United States v. Aramony*, 88 F.3d 1369, 1382 (4th Cir. 1996).

---

[10] Section 7206(2) is sometimes referred to as the Internal Revenue Code's aiding and abetting provision. *See, e.g., United States v. Morrison*, 833 F.3d 491, 501 (5th Cir. 2016) (§ 7206(2) "incorporates aiding and abetting liability"). But unlike prosecutions under 18 U.S.C. § 2(a), section 7206(2) does not require proof that the aided-or-assisted taxpayer was criminally responsible. *See United States v. Griffin*, 814 F.2d 806, 811 (1st Cir. 1987) ("[§] 7206(2) is not an accessorial statute. It is a self-contained criminal statute that requires no reference to any other substantive part of the criminal code. Any person who aids or assists in the preparation or presentation of a false return *is* the principal, as the statute clearly demonstrates by making irrelevant "*whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return....*") (emphasis in original).

[11] Proof of tax loss is not required for conviction under § 7206(2). *United States v. Cohen*, 617 F.2d 56, 58 (4th Cir. 1980).

### 1.  Aiding or Assisting in Preparation or Presentation of Tax Return

The first element of § 7206(2) is satisfied by the defendant "providing information that results" in a false tax return. *Nealy*, 729 F.2d at 963. Such information varies, but the goal is often to understate income or overstate deductions. (In this case, it was to overstate payments of tax.)

In the Fourth Circuit, for example, such information has included an engineering report that inflated the amount of specific coal reserves and resulted in false tax returns with unjustifiably large deductions. *Id.* at 962-63. In the Fifth Circuit, it has included "deliberately overstated" yacht appraisals that resulted in false returns with correspondingly inflated charitable deductions. *United States v. Wolfson*, 573 F.2d 216, 225 (5th Cir. 1978). In the Sixth Circuit, the provided information has included false daily sheets, prepared by a casino employee for his employer, understating income collected from gamblers who owed, that made its way onto the casino's books and eventually onto its tax return. *United States v. Maius*, 378 F.2d 716, 718 (6th Cir. 1967). And in the Second, Third, and Seventh Circuits, it has included false Forms W-2 that resulted in returns with understated income. *United States v. MacKenzie*, 777 F.2d 811 (2d Cir. 1985); *United States v. Gambone*, 314 F.3d 163 (3d Cir. 2003); *United States v. Isaksson*, 744 F.2d 574 (7th Cir. 1984).

### 2.  Tax Return False or Fraudulent as to Material Matter

To satisfy the second element, the tax return that results from the provided information must be false, and the falsity must be material. *Nealy*, 729 F.2d at 963.

In 1995, the Supreme Court emphasized that a false statement under 18 U.S.C. § 1001 is material if it has "a natural tendency to influence, or [is] capable of influencing, the decision of the decisionmaking body to which it was addressed." *United States v. Gaudin*, 515 U.S. 506, 509 (1995). A few years later, the Supreme Court suggested that this definition of materiality is also appropriate for § 7206:

> To obtain a conviction on the tax offense at issue, the Government
> must prove that the defendant filed a tax return "which he does not
> believe to be true and correct as to every material matter." 26 U.S.C.
> § 7206(1). In general, a false statement is material if it has "a natural
> tendency to influence, or [is] capable of influencing, the decision of
> the decisionmaking body to which it was addressed."

*Neder v. United States*, 527 U.S. 1, 16 (1999) (quoting *Gaudin*).

The Fourth Circuit has acknowledged the Supreme Court's suggestion in passing. *United States v. Raza*, 876 F.3d 604, 615 (4th Cir. 2017) ("For example, in *Neder*, the Supreme Court concluded—in the context of a tax fraud prosecution—that to be material a false statement must be capable of influencing the decision of the decisionmaking body to which it is addressed.") (cleaned up). But it has not addressed the issue directly, and in a recent unpublished decision, it relied instead on a definition of materiality from its 1996 opinion in *Aramony*. *See United States v. Smith*, No. 21-4190, 2022 WL 16948593, *5 (4th Cir. Nov. 15, 2022) (unpublished).

*Aramony* held that the test of materiality for § 7206(2) is "whether a particular item must be reported in order that the taxpayer estimate and compute his tax correctly." *Aramony*, 88 F.3d at 1384. But it also provided that the test for materiality is broad, is "not simply to ensure that the taxpayer pay the proper amount of taxes," and is "intended to ensure also that the taxpayer not make misstatements that could hinder the IRS in carrying out such functions as the verification of the accuracy of that return or a related tax return." *Id*. at 1384-85.

Because of the Supreme Court's suggestion in *Neder*, and because some of the language in *Aramony* is like the language in *Neder*, the government's proposed jury instruction for § 7206(2) incorporates language from both cases.

### 3. Willfulness

In providing the information that results in the false tax return, the defendant must also act willfully. As explained above, willfulness for purposes of federal tax crimes is a voluntary and

intentional violation of a known legal duty. *Cheek*, 498 U.S. at 201. In the context of § 7206(2), it means that the false return must have been the deliberate objective of the defendant. *See, e.g.,* *MacKenzie*, 777 F.2d at 820 (defendants issued false W-2s to employees "to aid them in filing their own false tax returns"); *Gambone*, 314 F.3d at 168 (defendants issued false W-2s "to be attached to employees' personal income tax returns").

## IV.    ANTICIPATED EVIDENCE

To illustrate the type of evidence the government will present at trial, this brief focuses on 2019. That year encompasses three of the § 7202 counts (Counts 6-8) and one § 7206(2) count (Count 11). Dkt. No. 97, ¶¶ 10-14.

One of the three § 7202 counts in 2019—Count 8 for the fourth quarter—involves both a failure to truthfully account for trust fund taxes and a failure to pay them over to the IRS.



The failure to truthfully account for trust fund taxes will be proven by IRS documents and testimony from an IRS representative. For instance, the IRS account transcript for the fourth quarter of 2019 shows that no return was filed.

```
CODE EXPLANATION OF TRANSACTION

n/a  No tax return filed
```

Ex. 23, pp. 12-13. An official IRS Certification of Lack of Record says the same.

## Certification of Lack of Record

**To Whom it May Concern:**

I certify that the Commissioner of the Internal Revenue has custody of Federal tax record(s) filed in, or accessible from, the office at the following address:

| Street address | | |
|---|---|---|
| 999 Stewart Ave Suite 110-CI | | |
| City | State | ZIP code |
| Bethpage | NY | 11714 |

The Commissioner of Internal Revenue would have the Federal tax record(s) described below, or entry(ies) pertaining to such record(s), stored at or accessible from this address. I certify that, having made a diligent search for the described record(s), no such record(s) or entry(ies) pertaining to such record(s) was/were found.

### Description of Record(s) Sought

**Taxpayer identification information**

| Taxpayer name | Taxpayer Identification Number (SSN, TIN, or ITIN) |
|---|---|
| NEXUS SERVICES INC | 46-4996933 |

| Street address | | |
|---|---|---|
| 113 MILL PLACE PKWY | | |
| City | State | ZIP code |
| VERONA | VA | 24482 |

Description of information sought

FORM 941, EMPLOYER'S QUARTERLY FEDERAL TAX RETURN, THAT WAS DULY COMPLETED, EXECUTED, AND FILED BY THE TAXPAYER FOR THE PERIODS LISTED BELOW

Period(s)

June 30, 2014 to September 30, 2015, December 31, 2019, March 31, 2021, and March 31, 2023 to March 31, 2024.

| Affix IRS Seal here | Under authority of Commissioner Delegation Order 11-5 (or redelegation thereunder), I certify that the foregoing is true and correct, and I have signed this certification and affixed to it the seal of office of the Internal Revenue Service. |
|---|---|
| | Name |
| | Anne E. Stentz |
| | Title |
| | Supervisory Investigative Analyst |
| | Signature |
| | Date signed  11/18/2024 |

**Government Exhibit** 521

Form **3050** (Rev. 3-2006)    Catalog Number 19212C    publish.no.irs.gov    Department of the Treasury-**Internal Revenue Service**

Ex. 521. And an IRS representative will likewise testify that no Form 941 for the fourth quarter of 2019 was filed.[12]

---

[12] The other nine failures-to-truthfully-account-for in Counts 1-3 and 13-18 of the second superseding indictment will be proven the same way, except for Count 13, which differs slightly. Payroll processor ADP filed a Form 941 for Nexus for the fourth quarter of 2022 incorrectly showing Nexus had zero employees, no wages, and no trust fund taxes, because Nexus failed to give ADP any of the necessary information. Ex. 529. Had Nexus filed a Form 941 on its own, which it failed to do, discrepancies between the two returns would have been investigated and resolved.

Count 8's failure to pay over the trust fund taxes to the IRS will also be proved with documents and testimony. For instance, payroll processor Paychex's record of Nexus's 2019 employee earnings and withholdings shows withheld trust fund taxes of $338,900 in the fourth quarter of 2019.



Ex. 109, p. 562 ($221,692.56 + $88,438.19 + $28,769.45 = $338,900.20). The unfiled Form 941 that Paychex prepared for Nexus shows the same federal income tax withheld ($221,692.56), the same Social Security tax withheld ($176,876.57/2 = $88,438.29), and the same Medicare tax withheld ($52,515.55/2 = $26,257.78 + $2,511.69 = $28,769.47).

Ex. 115, p. 1. And the IRS account transcript for the fourth quarter of 2019 shows payments of only $10,901.60, all delinquent.

|  | | | |
|---|---|---|---|
| 650 | Federal tax deposit | 02-28-2020 | -$2,000.00 |
| 650 | Federal tax deposit | 12-27-2021 | -$2,227.00 |
| 650 | Federal tax deposit | 12-28-2021 | -$2,228.00 |
| 650 | Federal tax deposit | 12-29-2021 | -$2,223.60 |
| 650 | Federal tax deposit | 12-23-2021 | -$2,223.00 |

Ex. 23, p. 13.[13]

---

[13] The other 15 failures-to-pay-over in Counts 1-10 and 13-18 will be proven similarly.

Documents and testimony will also prove the other two elements of § 7202. For duty, the evidence will show among other things that the defendant had the power to pay Nexus's liabilities and in fact routinely authorized payments of Nexus's liabilities. For willfulness, testimonial and documentary evidence will establish among other things that in 2019 the defendant authorized Nexus to pay him and his husband wages of $988,000 in lieu of remitting to the IRS $871,000 in trust fund taxes that Nexus withheld from its employees' wages.



Ex. 610.

For the 2019 § 7206(2) count, documents and testimony will also prove that the defendant willfully aided and assisted in the preparation and presentation of a false tax return: namely, his and his husband's joint federal income tax return for 2019. On that return, both the federal income tax withheld and the total payments were reported as $291,144.



Ex. 32, p. 2. This amount exceeded the $289,715 of total tax due (Line 16) and resulted in a refund of $1,429 (Line 20). But documentary evidence shows that the total payments amount of $291,144 was false.

First, the three Forms W-2 attached to the 2019 tax return reflect withheld federal income taxes of $166,566, $117,899, and $3,500, for a total of $287,965.[14]



Ex. 32, p. 17.

---

[14] This is $3,179 shy of the $291,144 reported, and the source of the additional $3,179 is not clear, but the difference does not matter for present purposes.



Ex. 32, p. 19.

Ex. 32, p. 21.

Second, the federal income tax withholdings on the two Nexus W-2s match Paychex's records of the federal income taxes supposedly withheld from the defendant and his husband.

| CHECK DATE | DESCR | REGULAR HOURS | OVERTIME HOURS | REGULAR AMOUNT | OVERTIME AMOUNT | TOTAL EARNINGS | REIMB & OTHER PAYMENTS | SOC SEC + MED | FEDERAL TAX | STATE TAX |
|---|---|---|---|---|---|---|---|---|---|---|
| 11/19 | Salary PX401 ERM | | | 11105.77 | | 11105.77 | *111.06 | 256.21 | 3262.68 | 609.57 |
| 11/26 | Salary PX401 ERM | | | 11105.77 | | 11105.77 | *111.06 | 256.22 | 3262.68 | 609.57 |
| 12/03 | Salary PX401 ERM | | | 11105.77 | | 11105.77 | *111.06 | 256.21 | 3262.68 | 609.57 |
| 12/10 | Salary PX401 ERM | | | 11105.77 | | 11105.77 | *111.06 | 256.22 | 3262.68 | 609.57 |
| 12/17 | Salary Bonus PX401 ERM | | | 11105.77 50.00 | | 11155.77 | *111.56 | 257.39 | 3281.00 | 612.41 |
| 12/24 | Salary PX401 ERM | | | 11105.77 | | 11105.77 | *111.06 | 256.21 | 3262.68 | 609.57 |
| 12/31 | Salary PX401 ERM | | | 11105.77 | | 11105.77 | *111.06 | 256.22 | 3262.68 | 609.57 |
| QTR 4 | | | | 155530.78 | | 155530.78 | | M 3588.18 | 45942.44 VA | 8575.10 |
| YTD 2019 | | | | 562607.70 | | 562607.70 | | S 8239.80 M 11200.22 | 166566.48 VA | 31249.58 |

Page 39 of 563    0942 1605-2759  Nexus Services Inc

EMPLO
(Request

HOURS, EARNINGS, AND REIMBURSEMENTS & OTHER PAYMENTS         WITHHOLDINGS

Ex. 109, p. 39 (reflecting 2019 federal income tax withholding for Donovan as $166,566).

20

| | | HOURS, EARNINGS, AND REIMBURSEMENTS & OTHER PAYMENTS | | | | | WITHHOLDINGS | | |
|---|---|---|---|---|---|---|---|---|---|
| CHECK DATE | DESCR | REGULAR HOURS | OVERTIME HOURS | REGULAR AMOUNT | OVERTIME AMOUNT | TOTAL EARNINGS | REIMB & OTHER PAYMENTS | SOC SEC + MED | FEDERAL TAX | STATE TAX |
| 11/19 | Salary | | | 9086.54 | | 9086.54 | | 212.07 | 2124.93 | 508.96 |
| 11/26 | Salary | | | 9086.54 | | 9086.54 | | 212.07 | 2124.93 | 508.96 |
| 12/03 | Salary | | | 9086.54 | | 9086.54 | | 212.06 | 2124.93 | 508.96 |
| 12/10 | Salary | | | 9086.54 | | 9086.54 | | 212.07 | 2124.93 | 508.96 |
| 12/17 | Salary Bonus | | | 9086.54 50.00 | | 9136.54 | | 213.24 | 2142.43 | 511.84 |
| 12/24 | Salary | | | 9086.54 | | 9086.54 | | 212.07 | 2124.93 | 508.96 |
| 12/31 | Salary | | | 9086.54 | | 9086.54 | | 212.07 | 2124.93 | 508.96 |
| QTR 4 | | | | 127261.56 | | 127261.56 | | M 2970.12 | 29766.52 VA | 7128.32 |
| YTD 2019 | | | | 458184.70 | | 458184.70 | | S 8239.80 M 8887.81 | 117899.34 VA | 24603.60 |

Page 74 of 563    0942 1605-2759 Nexus Services Inc

EMPLO
(Request

Ex. 109, p. 74 (reflecting 2019 federal income tax withholding for defendant as $117,899).

Third, the records of withheld federal income taxes from Nexus's payroll processor Paychex match the amounts on the Forms 941 Nexus filed for the first three quarters of 2019, as well as on the unfiled Form 941 that Paychex prepared for Nexus (as discussed above). Exs. 16-18, 109, 115.

Fourth and critically important, IRS account transcripts show, and an IRS representative will testify, that Nexus failed to pay over $871,000 in trust fund taxes that Nexus withheld from its employees' wages in 2019. Exs. 23, 109, 115. The $291,144 reported as "total payments" on the 2019 1040 for the defendant and his husband, therefore, is false, and because they paid far less than $291,144, that falsehood is material.[15]

Finally, testimonial and documentary evidence will also show that the defendant, who was responsible for paying trust fund taxes to the IRS, knew that the amount of federal income tax

---

[15] A responsible person who withholds taxes from his own wages but fails to pay them over to the IRS may not claim credit for the withheld taxes on his personal income tax return. Those funds were never "actually withheld" because they never functionally left the control of the taxpayer. *May v. Comm'r*, 137 T.C. 147, 152-154 (2011); *United States v. Blanchard*, 618 F.3d 562, 576 (6th Cir. 2010). However, to avoid any argument that the amounts reported as "federal income tax withheld" on the 2019 and 2020 joint tax returns were accurate because the paychecks the defendant and his husband received were net of withholdings, the second superseding indictment did not charge the "federal income tax withheld" amounts as false. Instead, it charged as false the amounts listed as "total payments."

reportedly withheld on his own and his husband's 2019 Forms W-2 had not actually been paid to the IRS. Nevertheless, the defendant willfully caused Nexus to distribute the Forms W-2 to Nexus employees, including to himself and his husband, with the deliberate objective of falsifying his and his husband's joint 2019 1040 (regardless of who might prepare the return) by falsely overstating their total tax payments.[16]

## V.     POTENTIAL EVIDENTIARY ISSUES

Federal tax prosecutions typically present the following evidentiary issues.

### A.  Statements by a Party Opponent

The government may offer statements made by the defendant. Hearsay is a statement not made by the declarant at the current trial and offered to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Hearsay is generally inadmissible unless an exception permits its admissibility. A party's own statement, if offered against him by an opposing party, is one such exception. Fed. R. Evid. 801(d)(2)(A); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) ("Admissions by a party-opponent are not considered hearsay and therefore can be admitted against that party…"). A statement by a party opponent is not hearsay, even if the statement is offered for its truth. *Id.* The government, therefore, may offer the defendant's own statements.

### B.  The Defendant May Not Introduce His Own Out-of-Court Statements

Although the government may offer statements by the defendant, the Court should preclude the defendant from seeking to introduce his own out-of-court statements into evidence for their truth. There is no hearsay exception for "self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996); Fed. R. Evid. 801(c). The government will object to any attempts by the

---

[16] The § 7206(2) count for 2020 will be proven in much the same way.

defendant to elicit from witnesses his own self-serving statements, unless those statements are being offered for an admissible, non-hearsay purpose (such as their effect on the listener).

### C. Documentary Evidence

Although the government expects that the defendant will stipulate to the admissibility of many of the documents discussed below, the government will briefly address their admissibility.

#### 1. Business Records

The government intends to introduce business records in its case-in-chief. These records include bank account records, Exs. 246-364, 368, 371-73, 426-30, 434-38, 440-41, 449, 451, and 545-48; records from various payroll providers, Exs. 54-119, 386-405, 416-17, and 507-17; car purchase and loan files, Exs. 166-88; records from various vendors who did business with the defendant or Nexus, Exs. 191-210, 223-45, 421, 424-25, 487-506; business records from Subversivo, LLC, Exs. 442-48; and Nexus's own business records, Exs. 66, 120-59, and 411-15. These documents are records of a regularly conducted activity pursuant to Rule 803(6) of the Federal Rules of Evidence and thus are an exception to the rule excluding hearsay.

Rather than calling various custodians of records to testify, the government plans to move to admit the evidence as self-authenticating pursuant to Rule 902(11). These records were made available to the defense in discovery and appropriate certifications have been provided. Consistent with Rule 902(11)'s requirements, the government provided notice of its intent to proceed in this matter on October 10, 2023; November 11, 2023; November 5, 2024; and November 21, 2024. Dkt. Nos. 46, 54, 138, and 151.

#### 2. Certified Copies of Public Records

The government anticipates offering into evidence several certified copies of certain public records. *See, e.g.*, Exs. 47-53, 374-75, 380-81, 383, 385, and 549. Certified copies of public records

require no extrinsic evidence of authenticity for admissibility. *See* Fed. R. Evid. 902(1), (2), (4); *see also United States v. Howard-Arias*, 679 F.2d 363, 367 (4th Cir. 1982) (stating that Rule 902 recognizes that the possibility of fraud, forgery and misattribution of certain documents is so slight that the general requirement of authentication by extrinsic evidence, Fed. R. Evid. 901, is dispensed with).

### 3. IRS Service Center Record

The government intends to offer documents from the IRS Service Center through an IRS witness. Exs. 1-29, 32-38, 40-46, 406-10, and 521-31. These records are admissible under Rules 803(6), (8) and 902(4), (11). *See, e.g., United States v. Childress,* 24 Fed. Appx. 139, 141 (4th Cir. 2001) ("[O]fficial IRS documents, even if generated by a computer, are admissible as public records under Federal Rule of Evidence 803(8)"). During the IRS witness's testimony, the government also intends to offer certificates of lack of records, which are admissible under Rules 803(10) and 902(4), (11). *See, e.g., United States v. Mendoza-Orellana*, 133 Fed. Appx. 68, 69 (holding that a certificate of nonexistence of record is a self-authenticating public record under Federal Rules of Evidence 803(10) and 902(4)).

### 4. Photocopies

Many of the documents that the government intends to offer into evidence are photocopies of documents. Under Rule 1003, a duplicate, such as a photocopy, has the same status as an original, unless: (1) there is a genuine question as to the authenticity of the original or (2) it would be unfair to admit the duplicate in lieu of the original. The government does not anticipate that either of these exceptions will apply to any of the records introduced in this case.

### D.  Charts and Summaries

As part of its case-in-chief, the government intends to offer several summary exhibits. Rule 1006 permits the admission of summary charts into evidence as a surrogate for underlying voluminous records as long as the summary is accurate, the underlying records are admissible, and the records were made available to the defendant at a reasonable time and place before trial. *See United States v. Janati*, 374 F.3d 263, 272–73 (4th Cir. 2004).

If these charts are not admitted as substantive summary exhibits under Rule 1006, the Government intends to use these illustrations as visual aids to help explain its case to the jury. Rule 611(a) governs the use of visual aids. Visual aids are typically used as pedagogical devices either to simplify complex evidence or to assist counsel in the presentation of an argument to the jury. Whereas a Rule 1006 summary chart "must be an objectively accurate summarization of the underlying documents," a Rule 611(a) pedagogical device may be less neutral and may reflect the inferences and conclusions of the party offering the summary. *United States v. Oloyede*, 933 F.3d 302, 311–12 (4th Cir. 2019).

### E.  Summary Witnesses

The government plans to present summary witness testimony in its case-in-chief through an IRS revenue agent. The purpose of this summary testimony is to assist the jury by synthesizing evidence from various sources (*e.g.*, Nexus's own records, payroll providers' records, and IRS records) to present a complete picture of the defendant's conduct. As part of her testimony, the IRS revenue agent will perform calculations of the unpaid trust fund taxes for various quarters, including quarters such as the first three quarters of 2015 where the defendant did not file a Form 941 quarterly tax return for Nexus. She will also perform calculations regarding the total amounts of Nexus's money that the defendant spent on various luxury purchases rather than paying Nexus's

trust fund taxes. Finally, the IRS revenue agent will present various summary exhibits, such as Government Exhibit 600 which provides a visual representation of the defendant's conduct.

Summary witness testimony is routinely admitted in tax prosecutions under Rule 611(a). This summary testimony does not require the revenue agent to be qualified as an expert witness. *See United States v. Pree*, 408 F.3d 855, 869 (7th Cir. 2005) ("When a summary witness simply testifies as to what the Government's evidence shows, he does not testify as an expert witness.").

### F.  Witness Sequestration

As is standard practice in federal tax prosecutions, the government will request that the revenue agent, who is testifying as a summary witness, be permitted to remain in the courtroom through the presentation of the evidence. Federal Rule of Evidence 615 generally excludes witnesses from the courtroom. However, Rule 615 "does not authorize excluding… a person whose presence a party shows to be essential to presenting the party's claim." Fed. R. Evid. 615(c). The decision to permit a witness to remain in the courtroom is within the Court's discretion. *See United States v. Rhynes*, 218 F.3d 310, 318 n.8 (4th Cir. 2000) (approving exemption of summary witness from sequestration order).

The revenue agent's presence is essential to the presentation of the government's case. It is her role to know and summarize the evidence by means such as calculating the unpaid trust fund taxes and the amounts of Nexus's money that the defendant spent on various luxuries based on an accurate analysis of the testimony and exhibits admitted at trial. Thus, the Government requests that the revenue agent be exempted from any Rule 615 request to exclude her from the courtroom.

### G.  Law Enforcement Reports of Interview

The discovery in this case includes numerous interview reports from the IRS. Such reports cannot be used as the basis to impeach witness testimony, nor can they be published to the jury.

Statements of witnesses, as set forth in interview reports, are not statements written or adopted by the witnesses and therefore cannot be used to impeach.

Law enforcement interview reports are not statements of the witness under the Jencks Act, which defines a statement as "a written statement made by said witness and signed or otherwise adopted or approved by him"; a recording or transcription that "is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously"; or a statement made by a witness to the grand jury. *See* 18 U.S.C. § 3500(e). The Supreme Court has held that "summaries of an oral statement which evidence substantial selection of material" or "statements which contain [an] agent's interpretations or impressions" are "not to be produced." *See Palermo v. United States*, 360 U.S. 343, 352-53 (1959); *United States v. Roseboro*, 87 F.3d 642, 645 (4th Cir. 1996) ("[W]hen a government agent interviews a witness and takes contemporaneous notes of the witness' responses, the notes do not become the witness' statement—despite the agent's best efforts to be accurate—if the agent does not read back, or the witness does not read, what the [agent] has written.") (internal quotation marks omitted)).

Thus, the defendant should be precluded from introducing the contents of the interview reports to impeach witnesses for arguably inconsistent statements because the interview reports are not the statements of the witnesses themselves. Moreover, the defendant should be precluded from publishing the contents of the interview reports to the jury, or otherwise suggesting to the jury that the interview report is a statement of the witness.

>

>

>

>

>

## CONCLUSION

The United States submits this brief to assist the Court and does not request any relief.

Respectfully submitted,

CHRISTOPHER R. KAVANAUGH
United States Attorney

/s/ William M. Montague
Trial Attorney
U.S. Department of Justice, Tax Division
150 M Street, N.E.
4 Constitution Square, Mail Stop: 1.1505
Washington, D.C. 20002
Ph:     (202) 616-2386
Email: william.m.montague@usdoj.gov

/s/ Matthew C. Hicks
Matthew C. Hicks, Trial Attorney
U.S. Department of Justice, Tax Division
150 M Street, N.E.
4 Constitution Square, Mail Stop: 1.1313
Washington, D.C. 20002
Ph:     (202) 616-2412
Email: matthew.c.hicks@usdoj.gov

## CERTIFICATE OF SERVICE

I certify that on January 2, 2025, I electronically filed the foregoing with the Clerk of the

Court using the CM/ECF system, which sent notification of such filing to all counsel of record.

/s/ Matthew C. Hicks
Matthew C. Hicks
Trial Attorney